# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:19-CV-00695-GCM-DCK

| | | |
|---|---|---|
| JODY ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| PSA AIRLINES, INC. GROUP | ) | |
| INSURANCE PLAN, | ) | |
| PSA AIRLINES GROUP HEALTH | ) | |
| BENEFIT PLAN, | ) | |
| PSA AIRLINES PLAN B EMPLOYEE | ) | |
| BENEFIT PLAN, | ) | |
| QUANTUM HEALTH, INC., | ) | |
| PSA AIRLINES, INC., | ) | |
| MCMC, LLC, | ) | |
| PSA AIRLINES SHARED SERVICES | ) | |
| ORG., | ) | |
| UMR, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "PSA Airlines Defendants' Motion To Dismiss" (Document No. 40), "Defendant Quantum Health, Inc.'s Notice Of Joinder In PSA Defendants' Motion To Dismiss And Supplemental Motion To Dismiss" (Document No. 42), "UMR, Inc.'s Motion Under Federal Rule of Civil Procedure 12(b)(1) And 12(b)(6) To Dismiss The Amended Complaint" (Document No. 44), and "Defendant MCMC, LLC's Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim" (Document No. 51). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and are now ripe for disposition. In the interests of judicial economy and efficient case management, the undersigned will consider the pending motions together in this Memorandum and Recommendation. Having

carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motions be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Jody Rose ("Plaintiff" or "Rose") initiated this action with the filing of a "Complaint" in this Court on December 20, 2019 against Defendants PSA Airlines, Inc. Group Insurance Plan, PSA Airlines Group Health Benefit Plan, PSA Airlines Plan B Employee Benefit Plan, PSA Airlines, Inc., PSA Airlines Shared Services Org.,[1] UMR, Inc. ("UMR"), Quantum Health, Inc. (also known as "MyQHealth by Quantum") ("Quantum"), and MCMC, LLC ("MCMC") (collectively, "Defendants"). (Document No. 1). On January 29, 2020, Plaintiff filed an "Amended Complaint" against Defendants. (Document No. 15). In the Amended Complaint, Plaintiff alleges two claims against Defendants. The first claim against Defendants is for wrongful denial of health benefits under the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Id. at pp. 16-20. The second claim against Defendants is for breach of fiduciary duties under ERISA, 29 U.S.C. § 1132(a)(3). Id. at pp. 20-29. Plaintiff contends that all Defendants "are fiduciaries under ERISA." Id. at p. 4.

Plaintiff's claims arise out of a tragic set of facts. Plaintiff Rose is the "Administratrix of the Estate of Kyree Devon Holman [('Holman')]," filing the present lawsuit "for the exclusive benefit of the next of kin and beneficiaries of Kyree Devon Holman," acting "as the lawful representative of [Holman's] Estate." Id. at p. 1. Holman died tragically at age 27 on February 9, 2019 after doctors at Duke University Hospital diagnosed him with giant cell myocarditis while "waiting for his [heart] transplant to be approved by Defendants." Id. at pp. 5, 14. The Amended

---

[1] As the "PSA Airlines Defendants' Motion To Dismiss" notes, the properly named PSA Defendants include PSA Airlines, Inc. and PSA Airlines, Inc. Group Benefit Plan (collectively, "PSA Defendants"). The other Defendants that Plaintiff names in the Complaint and the Amended Complaint were improperly included.

Complaint details Holman's background as a flight attendant employed by PSA Airlines. Id. at p. 4. As an employee of PSA Airlines, Holman had health and welfare benefits through PSA's "fully self-funded" health benefit plan ("the Plan"), which Plaintiff claims is an "employee welfare benefit plan" under ERISA. Id. at p. 2. In late December 2018, Holman began to develop "flu-like symptoms," upon which he "went to an urgent care facility…and was treated for acute bacterial bronchitis." Id. at pp. 4-5. On December 23, 2018, Holman "passed out in his hotel room in Canada on a work layover and was flown back to Charlotte, North Carolina." Id. at p. 5. The next day, he "was admitted to Novant Hospital in Charlotte" and was "treated with cardioversion." Id. After his condition worsened, Holman "was medically air transferred to Duke University Hospital ("Duke") with acute heart failure and ventricular tachycardia." Id. A series of biopsies revealed "giant cell myocarditis" – prompting doctors at Duke to recommend Holman for a heart transplant. Id. According to the Amended Complaint, "[o]n information and belief, [Holman] was number one on the heart transplant waiting list and Duke was prepared to move forward with [the] heart transplant immediately upon Defendants' approval of [Holman's] claim." Id. at p. 6.

The non-PSA Defendants – including UMR, Quantum, and MCMC – seem to have served various support functions to the Plan. The Amended Complaint alleges that Defendant UMR "provides claim administrative services for the Plan such as making claim payments for medical claims and is the named 'claims appeal fiduciary for medical claims' by the Plan." Id. at p. 3. Plaintiff contends that Defendant Quantum performs the same services, as "UMR contracted with Quantum to perform certain of UMR's claim administration responsibilities, including as they related to the handling [of] the claim and appeal processing and determinations and the external review coordination at issue in this lawsuit." Id. at pp. 3-4. Quantum, the Amended Complaint alleges, was also a "named 'claims appeal fiduciary for medical claims' by the Plan." Id.

According to Plaintiff, MCMC "contracted to provide external review services for the claim at issue in this lawsuit on behalf of or at the direction of some or all of the other defendants." Id. at p. 4.

Given the deterioration in and severity of Holman's condition, Duke began the process of submitting information in support of his claim for coverage of the heart transplant under the Plan just days after determining that Holman was a heart transplant candidate in early January 2019. Id. at pp. 5-6. Duke allegedly indicated that the claim was "urgent." Id. at p. 6. After Duke submitted medical information "related to [Holman's] condition to Defendants in support of [Holman's] claim for a heart transplant," Defendants allegedly denied the claim on January 17, 2019. Id. at pp. 6-7. In a letter denying the claim, Defendants allegedly indicated that "according to summary plan description language...this treatment is considered experimental or investigational...because the effectiveness has not been established," and the Plan did not cover "experimental drugs and medicines." Id.

Duke allegedly resubmitted the claim following the initial denial, upon which "Defendants ordered a medical review to be performed by AllMed Healthcare Management." Id. at p. 7. The doctor performing the review indicated that the denial should be "upheld" because Holman did "not meet all the InterQual criteria." Id. Plaintiff indicates that "[t]he clinical criteria relied upon to deny [Holman's] claim for a heart transplant by Defendants [] were the InterQual 2018.2 Procedures Criteria related to Cardiac Transplantation," which, according to Plaintiff, do "not contain any requirement, recommendation, or guideline that a heart transplant candidate have no prior history of alcohol misuse or be alcohol-free for 6 months." Id. at p. 8. These criteria, according to Plaintiff, "are not included in the Plan, are not referenced by the Plan, are not incorporated into the Plan, and are not otherwise implicated by the Plan." Id. at p. 12. Based,

4

however, on the belief that the criteria did contain such a requirement, Defendants denied Holman's claim for coverage of the heart transplant procedure a second time, using letterhead containing both PSA Airlines and Quantum's names.  Id. at p. 8.

A second round of internal appeal allegedly ensued.  Duke "reiterated the exigency of [Holman's] situation to Defendants, stating that '[t]here is no other option but heart transplant at this time.'"  Id. at p. 9.  After ordering "medical review of the claim to be performed by Medical Review Institute of America, LLC," Defendants allegedly denied the claim a third time, based on the same finding in the medical review that the "InterQual criteria are not met (abstinence from alcohol for > 6 months)," thus rendering the "requested heart transplant [] not [] medically necessary."  Id. at p. 10.  The same medical review, though, that led to the third denial also indicated that Holman "will not survive without heart transplant."  Id.

Duke sought as a last attempt an "expedited external review."  Id. at p. 12.  Defendants allegedly contracted with MCMC to perform the external review, which allegedly "performed [Holman's] external review as a 'standard' review to be decided within 45 days and not as an 'expedited' review to be decided [] expeditiously…in no event more than 72 hours after receipt of [the] request."  Id. at p. 13.  During the waiting period in which the external review was taking place, Holman died on February 9, 2019 from "worsening heart failure," after developing "an intracranial hemorrhage which progressed to the point that heart transplantation was no longer a viable option."  Id. at p. 14.  Ultimately, "MCMC overturned the denial of Kyree's heart transplant" on March 6, 2019 – but it was too late, given that Holman had already died.  Id. at p. 15.

On April 6, 2020, the PSA Defendants filed a "Motion To Dismiss" (Document No. 40) and an accompanying "Brief In Support Of PSA Airlines Defendants' Motion To Dismiss" (Document No. 41).  Defendant Quantum filed a "Notice Of Joinder In PSA Defendants' Motion

To Dismiss And Supplemental Motion To Dismiss" (Document No. 42) and an accompanying "Brief In Support Of Its Supplemental Motion To Dismiss" (Document No. 43) on April 6, 2020. Defendant UMR filed a "Motion Under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) To Dismiss The Amended Complaint" (Document No. 44) and an accompanying "Memorandum Supporting Its Motion Under Federal Rule Of Civil Procedure 12(b)(1) And 12(b)(6) To Dismiss The Complaint" (Document No. 45) on April 6, 2020. On April 27, 2020, Defendant MCMC filed a "Motion To Dismiss For Failure To State A Claim" (Document No. 51) and an accompanying "Memorandum In Support Of Motion To Dismiss" (Document No. 51-1). Plaintiff filed a "Response In Opposition To Defendants' Motions To Dismiss" on June 5, 2020. (Document No. 55). On June 8, 2020, the undersigned granted Plaintiff leave to file a corrected response brief and supporting documents by June 10, 2020. (Document No. 57). Plaintiff filed the corrected "Response In Opposition To Defendants' Motions To Dismiss" on June 8, 2020. (Document No. 58). Defendants filed reply briefs on July 6, 2020. Specifically, the PSA Defendants filed a "Reply Brief In Support Of Defendants' Motion to Dismiss Plaintiff's Amended Complaint For Failure To State A Claim" (Document No. 59), Quantum filed a "Reply Brief In Support Of Its Motion To Dismiss" (Document No. 60), MCMC filed a "Reply In Support Of Motion To Dismiss" (Document No. 61), and UMR filed a "Reply Supporting Its Motion Under Civil Procedure Rule 12(b)(1) and 12(b)(6) To Dismiss The Amended Complaint" (Document No. 62).

The motions have now been fully briefed and are ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

**Motion To Dismiss Under Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction.  Fed.R.Civ.P. 12(b)(1).  The plaintiff has the burden of proving that subject-matter jurisdiction exists.  See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  The existence of subject-matter jurisdiction is a threshold issue the Court must address before considering the merits of the case.  Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).  "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed."  Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

When a defendant challenges subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Richmond, 945 F.2d at 768.  The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id.; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

**Motion To Dismiss Under Rule 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v.

7

American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

In ruling on the motion to dismiss, the Court can consider documents "integral to and explicitly relied on in the complaint." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999); accord E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011).

### III. DISCUSSION

Given that the four pending motions to dismiss Plaintiff's Amended Complaint are related, and also given that the arguments that Defendants make in their respective motions are remarkably similar, the Court will address each of those arguments in turn below. The discussion is separated

8

into subsections according to the arguments advanced in the Defendants' briefs. Where individualized consideration of any Defendant's argument is necessary because that argument pertains only to that individual Defendant, the undersigned will consider such argument when warranted.

**A. Section 502(a)(1)(B) of ERISA Does Not Permit Claims for the Monetary Value of Denied Benefits**

Each Defendant (the PSA Defendants, UMR, Quantum, and MCMC) advances the argument in its respective motion to dismiss that Plaintiff's first claim for relief for wrongful denial of benefits under ERISA at 29 U.S.C. § 1132(a)(1)(B) should be dismissed because the statute does not permit recovery of the monetary value of benefits that Holman never received because of his tragic and unfortunate death. See (Document No. 41, pp. 5-9); (Document No. 42, pp. 1-2); (Document No. 45, pp. 13-14); (Document No. 51-1, pp. 5-7). Plaintiff, on the other hand, contends in response that the Estate actually seeks "recoupment of benefits due under the Plan," and Defendants "mischaracterize the Estate's claim for relief as seeking the value of the benefits owed." (Document No. 15, p. 29); (Document No. 58, p. 3). Plaintiff seems to contradict herself, though, because at another point in the Amended Complaint, she indicates that she "seeks the full value of the heart transplant and any related services, as well as all other associated benefits to which Kyree would have been entitled had he lived." (Document No. 15, p. 20). Defendants' contention, then, that what Plaintiff truly seeks is the monetary value of the benefit – rather than the benefit itself – is supported by this statement in the Amended Complaint. Given the tragic death of Mr. Holman, the actual "benefit" at issue here – the heart transplant – logically cannot be recouped through this lawsuit. Instead, the Estate must, necessarily, only seek the *value* of that

heart transplant (rather than the procedure itself). The undersigned will analyze Defendants' argument for dismissal of Plaintiff's first claim below.

According to the Supreme Court, ERISA contains "carefully integrated civil enforcement provisions," and courts should be "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987) ("[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive").

ERISA permits a "participant or beneficiary" to bring "[a] civil action" in order "to recover *benefits* due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). If Congress had wished to provide a participant or his estate the remedy of seeking the value of benefits wrongfully denied but never received, courts must assume that it would have included language to that effect. See Russell, 474 U.S. at 147 (declining to read extratextual remedies into the ERISA statute that were not expressly provided for in the statutory text); accord Northwest Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 97 (1981) ("[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement"). The Supreme Court has articulated clear guidelines about the forms of relief available under this civil enforcement provision of ERISA at § 502(a)(1)(B). While the specific *facts* of this case have rarely been presented in federal courts, given the clear law regarding the available relief under § 502(a)(1)(B), it is of little import that cases with similar facts are rare

in federal jurisprudence.  Moreover, the one case that Plaintiff cites in support of its position was effectively overruled by the Fifth Circuit, as explained below.

If a benefit plan refuses to provide coverage for some medical benefit, a participant has two options for "seeking provision of those benefits": (1) paying "for the treatment [himself] and then [seeking] reimbursement through a § 502(a)(1)(B) action;" or (2) seeking "a preliminary injunction."  Aetna Health, Inc. v. Davila, 542 U.S. 200, 211 (2004).  Approximately twenty years prior to deciding the Davila case, the Supreme Court stated in Russell that where a participant has wrongfully been denied benefits, he or she can file a lawsuit pursuant to § 502(a)(1)(B) "to recover accrued *benefits*, to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future."  473 U.S. at 146-47 (emphasis added).  The Russell Court also held that the statute did not provide for compensatory or punitive damages on account of "delay in the plan administrators' processing of a disputed claim" – suggesting that even where, as here, a claim for coverage is ultimately (but belatedly) approved following a participant's death, compensatory damages for the delay are not available.  Id. at 144.

Taken together, these two cases suggest that where a participant is in a position to actually receive the benefit under ERISA (here, a heart transplant), then he or she can (1) sue to enjoin the benefit plan from refusing to provide such covered benefit; (2) pay for the benefit himself or herself and seek reimbursement; (3) seek declaratory relief that he or she is entitled to such benefit; and (4) sue to enjoin the benefit plan from refusing to pay such rightfully owed benefits going forward.  Nowhere in these cases does the Supreme Court indicate that a participant (or his estate) can sue to recover the *value* of the benefit that was not provided.  Indeed, the only monetary award

contemplated by the Supreme Court under § 502(a)(1)(B) is reimbursement for a benefit that a participant paid for him or herself. Case law from other circuits confirms these principles.

The Fifth Circuit decided a case in 2013 with similar facts to those in the present case. An individual was diagnosed with leukemia, and after complications developed, his doctors recommended stem cell transplant therapy. Hamann v. Independence Blue Cross, 543 F. App'x 355, 356 (5th Cir. 2013). The individual's doctors repeatedly submitted claims to his benefit plan for coverage of the stem cell therapy, which were repeatedly denied. Id. Eventually—as in the instant case—coverage for the procedure was approved. Id. Unfortunately, though, the approval came too late – the individual's "health had deteriorated, [and] he could not undergo" the medical procedure, dying "shortly thereafter." Id. Plaintiffs sought "to recover the value of [the stem cell treatment] as a 'benefit owed' under [the benefit plan]," even though the decedent "never [] received or paid for the requested treatment." Id. The Fifth Circuit, in examining the statute, found that despite the "approval of the" treatment coming "tragically [] too late," the appellate court was "bound by the specific relief provided by Congress under § 502(a)(1)(B)" – which did *not* "provide that beneficiaries can recover benefits they did not, and now cannot, receive." Id. at 357-58; see also Zavala v. Trans-Sys., 2006 WL 898019, at *1, *5 (D. Or. Apr. 4, 2006) (denying claim under § 502(a)(1)(B) for monetary value of stem cell transplant when decedent died from cancer without receiving the treatment).

The Ninth Circuit confirmed this principle in Durham v. Health Net – and although the Plaintiff there did not die (and thus brought suit herself rather than her estate suing on her behalf), the principle stood firm that "[t]here is no authority [under § 502(a)(1)(B)] which would allow a recovery for the value of withheld medical treatment" when the patient did not actually receive the treatment. 108 F.3d 337 (9th Cir. 1997); see Durham v. Health Net, 1995 WL 429252, at *1 (N.D.

Cal. June 22, 1995) (indicating that Plaintiff "did not obtain the treatment" for which she sought recovery of the monetary value).

Plaintiff contends that "[s]ince a beneficiary is expressly entitled to receive 'medical, surgical, or hospital care' benefits from" an ERISA-qualifying plan, and since the statute defines a "beneficiary" to include "person[s]" (which includes an estate), the "plain language" of the statute provides the relief that she seeks – the monetary value of the heart transplant that Mr. Holman never received. (Document No. 58, pp. 5-6, 9) (citing 29 U.S.C. §§ 1002(1), (8), (9)). Just because the ERISA statutory text *allows* for estates to benefit from an ERISA-qualifying health plan does not mean that this Court can interpret another section of ERISA – section 502(a)(1)(B) – to supply a remedy for which it does not provide. Plaintiff's argument extrapolates the implications of the definition section of ERISA too far. The Court does not here decide whether the Estate is a "beneficiary" under the terms of the Plan. Assuming it was, though, if Mr. Holman had, for example elected to receive the heart transplant, pay for it on his own, and later seek reimbursement, his Estate could sue under § 502(a)(1)(B) to recover the reimbursement value of the heart transplant *if he actually received the procedure*. Here, since he did not receive the transplant, federal jurisprudence interpreting this section of ERISA indicates that his Estate cannot now sue for the value of a medical procedure that Mr. Holman did not actually undergo – just as he could not himself sue for this same relief if he had lived.

Plaintiff's next argument, attempting to find refuge in the part of § 502(a)(1)(B) that permits suit to "enforce [] rights under the terms of the plan," similarly fails. (Document No. 58, pp. 6-7). As stated above, courts have interpreted § 502(a)(1)(B) to provide for various rights and remedies when a participant is wrongfully denied a benefit. Recovering the monetary value of a covered benefit that decedent never received is not one of those rights.

In a footnote, the Fifth Circuit in Hamann acknowledged the Plaintiffs' argument that if the court in that case refused to permit an estate to recover the value of benefits rightfully owed to a decedent that were denied by a health plan, health plans would be incentivized to deny expensive services and be absolved of liability for such services that a decedent never receives once he or she dies. 543 F. App'x at 357 n.3 (citing Erwin v. Texas Health Choice, L.C., 187 F. Supp. 2d 661, 669 (N.D. Tex. 2002)). Nonetheless, despite the appeal of such a policy argument, the Fifth Circuit stated that it was "bound by ERISA's terms which do not provide the relief the Plaintiffs seek." 543 F. App'x at 357 n.3. The Fifth Circuit's Hamman decision acknowledged Erwin and subsequently dismissed its rationale to reach an opposite result – implying that Erwin (a district court case) can no longer be relied upon. Indeed, the Erwin case—which held that a decedent's estate could recover the value of a liver transplant that the decedent did not receive before he died—is the *only* case that provides support for Plaintiff's position. 187 F. Supp. 2d at 668-69. Although Plaintiff contends that the Hamman case "is readily dismissable, as it relies too heavily on an arbitrarily narrow view of what a benefit is and when it is payable," the undersigned finds that the case law interpreting ERISA's § 502(a)(1)(B) civil enforcement provision squarely supports the Fifth Circuit's holding. (Document No. 58, p. 6).

Plaintiff's understandable desires for what the law *should* be unfortunately do not translate to provision of a remedy that the statute does not supply. The undersigned is persuaded by Defendants' convincing arguments to this effect, even where that *might* "mean that [Plaintiff] may be left with no remedy." (Document No. 41, p. 8). Plaintiff protests that Mr. Holman's alternatives – either seeking an injunction for the provision of the heart transplant benefit or paying for the transplant himself and later seeking reimbursement – are wholly impractical. (Document No. 58, pp. 8-9). Plaintiff indicates that because of the administrative exhaustion requirement under the

14

plan, Mr. Holman would have had just a few days' time to seek an injunction. Id. Furthermore, Plaintiff also contends that the idea that a "27-year-old flight attendant" should have paid "in excess of a million dollars" for a heart transplant and later sought reimbursement is an impractical proposition. Id. at p. 9. The Court is aware that these avenues are not well-suited to a gravely ill individual who urgently needs a life-saving, very expensive medical procedure. Still, the Court is constrained by the statute and guidance from case law, both of which point toward dismissal of this claim.

Given the Supreme Court's hesitance to read into the ERISA statute a remedy that does not exist in the text – particularly given the statute's complexity and comprehensiveness – the undersigned declines to do that here and read ERISA section 502(a)(1)(B) as permitting a novel form of relief that Plaintiff seeks. See Russell, 473 U.S. at 147. Even in cases presenting the most tragic and seemingly unjust set of facts, as in this case, courts are "bound by ERISA's terms," and only Congress has the power to remedy any resulting injustice by amending the statute. Hamman, 543 F. App'x at 357 n.3.[2] The undersigned therefore respectfully recommends that Defendants' motions to dismiss Plaintiff's section 502(a)(1)(B) claim be granted.

**B. Plaintiff's Claim Under Section 502(a)(3) of ERISA Should Not Be Dismissed Because Adequate Relief Does Not Exist at Section 502(a)(1)(B) of ERISA and Because Plaintiff Has Adequately Stated a Claim for Relief Under Section 502(a)(3) at the Motion to Dismiss Stage**

---

[2] Given the undersigned's recommendation that Defendants' motions to dismiss Plaintiff's first claim for relief pursuant to section 502(a)(1)(B) be granted, there is no need for the Court to address the argument advanced by Quantum, UMR, and MCMC that they are not proper defendants for a claim under this section of ERISA. See (Document No. 43, pp. 4-5); (Document No. 45, pp. 15-16); (Document No. 51-1, pp. 4-5). For this same reason, the Court will not address MCMC's argument that Plaintiff's section 502(a)(1)(B) claim must fail against it because "MCMC made the determination that Plaintiff seeks—i.e., that Holman was due benefits under the Plan." (Document No. 51-1, p. 5).

15

Defendants argue in each of their respective motions to dismiss that Plaintiff's second claim for relief – for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) – should be dismissed because it presents "the exact same claim, and demand[s] the same essential relief" as her first claim pursuant to ERISA section 502(a)(1)(B) for wrongful denial of benefits. (Document No. 41, pp. 11-12); (Document No. 43, pp. 7-8); (Document No. 45, pp. 18-20); (Document No. 51-1, pp. 7-8). In her Amended Complaint, Plaintiff states that she seeks "the full value of the heart transplant and any related services, as well as all other associated benefits to which Kyree would have been entitled had he lived" in conjunction with her second claim for relief. (Document No. 15, p. 28). Plaintiff, in response to Defendants, argues that although it "may not ultimately *recover* simultaneous relief or duplicative relief under both sections, [] it may – and certainly at the pleading stage – allege both theories of recovery; particularly where, as here, the Estate specifically alleged the claims for relief in the alternative." (Document No. 58, pp. 14-15).

At least as to Quantum, UMR, and MCMC, these Defendants also contend that even were Plaintiff permitted to plead both a section 502(a)(1)(B) claim and a section 502(a)(3) claim, the Court should dismiss the 502(a)(3) claim (impliedly, on the basis of futility) because § 502(a)(3) permits only "appropriate equitable relief." They argue that Plaintiff seeks compensatory damages under this section, which "fall[] outside § 502(a)(3)'s scope." (Document No. 43, p. 8); see also (Document No. 45, pp. 20-21); (Document No. 51-1, pp. 10-12). Plaintiff, in response, argues that such an argument ignores the Supreme Court's decision in CIGNA Corp. v. Amara, 563 U.S. 421 (2011), which expanded the understanding of available "equitable relief" under § 502(a)(3). (Document No. 58, p. 24). She argues that "the Supreme Court has now made clear that the monetary relief sought herein is properly considered equitable relief under the exact facts of this case." Id. at p. 27. The undersigned will examine both arguments for dismissal below.

1. **Plaintiff Is Not Barred From Simply Asserting Both A Section 502(a)(1)(B) Claim And A Section 502(a)(3) Claim At The Motion To Dismiss Stage, Particularly Where the 502(a)(1)(B) Claim Does Not Provide "Adequate Relief"**

The Supreme Court in <u>Varity Corp. v. Howe</u> limited the ability of a Plaintiff presenting a wrongful denial of benefits claim to recover under multiple sections of the ERISA statute. 516 U.S. 489, 515 (1996). In <u>Varity</u>, the Supreme Court specifically discussed the relationship between § 502(a)(1)(B) and § 502(a)(3) and held that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" 516 U.S. at 515. In that case, where relief was unavailable under § 502(a)(1)(B), the Court allowed the Plaintiffs to proceed with their claim under § 502(a)(3) because otherwise "they have no remedy at all" – which would not be consistent with ERISA's "literal language [], the Act's purposes, and pre-existing trust law." <u>Id.</u> Indeed, "ERISA's basic purposes favor a reading of [§ 502(a)(3)] that provides the plaintiffs with a remedy." <u>Id.</u> at 513. Section 502(a)(3) is thus a "'catchall' provision[] [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." <u>Id.</u> at 512.

At the motion to dismiss stage, the question is not whether the Plaintiff *will* recover on the merits of her claims, but rather whether she can proceed with a claim because it has facial plausibility. <u>Iqbal</u>, 556 U.S. at 678. The undersigned thus analyzes Defendants' arguments in light of the early stage of the proceedings. The Ninth Circuit has interpreted <u>Varity</u> to mean that where a § 502(a)(1)(B) claim fails, and "a plan participant has no remedy under another section of

17

ERISA, she can assert a claim for breach of fiduciary duty under" § 502(a)(3). Moyle v. Liberty Mut. Retirement Benefit Plan, 823 F.3d 948, 961-62 (9th Cir. 2016) (quoting Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001)). The Second Circuit has highlighted that there is a difference between pleading a cause of action under both ERISA sections and actually recovering on both claims – the latter of which *would* be incompatible with Varity. New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125, 134 (2d Cir. 2015). To dismiss a § 502(a)(3) claim at the motion to dismiss stage is premature when Plaintiff does not have an adequate remedy under § 502(a)(1)(B) – given that the undersigned respectfully recommends that such claim for wrongful denial of benefits be dismissed.[3] See Silva v. Met. Life Ins. Co., 762 F.3d 711, 726 (8th Cir. 2014) ("Varity does not limit the number of ways a party can initially seek relief at the motion to dismiss stage," for that case prohibits only "duplicate *recoveries*").

Plaintiff acknowledges that she "may not make a double recovery against defendants," and she does not seek a "duplicative" recovery – thus pleading the breach of fiduciary claim under § 502(a)(3) in the alternative to the first claim for relief under § 502(a)(1)(B). (Document No. 58, pp. 18, 21). Defendants, however, contend in their various briefs that a case from the Fourth Circuit, Korotynska v. Met. Life Ins. Co., 474 F.3d 101 (4th Cir. 2006), prohibits Plaintiff from

---

[3] The Court highlights that the present scenario – in which the undersigned is respectfully recommending dismissal under Rule 12(b)(6) of the section 502(a)(1)(B) claim because Plaintiff has not stated a claim for relief under that ERISA section – is different from a scenario in which there *would* be adequate relief under section 502(a)(1)(B) despite that claim ultimately being lost on the merits, thus precluding assertion of a claim under section 502(a)(3). See Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1287 (11th Cir. 2003) ("the availability of relief under Section 502(a)(3) was in no way dependent on the success or failure of the Section 502(a)(1)(B) claim because the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor"). Here, there is no adjudication on the merits of Plaintiff's 502(a)(1)(B) claim – she has not stated a claim at all under that section, and thus, there is no adequate relief. She must be allowed, per Varity, then, to pursue her section 502(a)(3) claim.

pursuing relief under both § 502(a)(1)(B) and § 502(a)(3).  See (Document No. 41, p. 11); (Document No. 43, pp. 7-8); (Document No. 45, p. 18); (Document No. 51-1, p. 7).

That case, however, does not directly address the facts in this case.  Although Korotynska was decided on a motion to dismiss, the Plaintiff in that case *never* brought a claim for relief under § 502(a)(1)(B) – instead, pleading *only* a § 502(a)(3) claim.  474 F.3d at 103.  Thus, the Fourth Circuit held that Plaintiff had adequate relief available to her through § 502(a)(1)(B), but she failed to assert a claim under that section of the statute simply because it was "undesirable" to her.  Id. at 107, 108.  Since she had a possible remedy under that section, she could not pursue her claim for equitable relief under § 502(a)(3) because to do so would violate the Varity Court's admonition that a denial of benefits claim can be allowed to proceed under § 502(a)(3) only where relief under the more logical section for such a claim – § 502(a)(1)(B) – was "inadequate."  Id. at 108.  The Plaintiff in Korotynska admitted to reserving her § 502(a)(1)(B) claim for suit at a later time, while here, Rose explicitly indicates that she is *only* pleading a breach of fiduciary duty claim under § 502(a)(3) in the alternative to her first claim for relief.  (Document No. 15, p. 21).  Korotynska did not hold that a plaintiff who cannot plead a § 502(a)(1)(B) claim – as here, because of the recommended dismissal – is left completely without a remedy.  In fact, adopting Defendants' strained interpretation of Korotynska in such a manner would contravene both the remedial purposes of the ERISA statute and the Supreme Court's explicit guidance in Varity that contradict Defendants' position – that where § 502(a)(1)(B) does not provide adequate relief, pursuit of a § 502(a)(3) claim is appropriate so that a plaintiff is not left without a possible remedy.  516 U.S. at 515.

In recommending that the § 502(a)(3) claim is not dismissed on this ground alone – that is, for the reason that Defendants proffer, that the claim is duplicative of the first claim and thus barred

– the undersigned does not conclude whether Plaintiff will ultimately *prevail* on such a claim. Resolution of the merits of her § 502(a)(3) claim is left for a later stage of the litigation.

> **2. Whether Plaintiff's Requested Relief in the Form of the Full Value of the Heart Transplant Is Permissible Relief Under § 502(a)(3) Depends Upon Whether Defendants Are Plausibly Considered Fiduciaries And Whether Defendants Breached Fiduciary Duties Owed to Decedent**

For the reasons stated above, although Plaintiff is allowed to *present* her claim for relief under § 502(a)(3), the undersigned at the motion to dismiss stage must next decide whether that claim for relief is *plausible*. Resolution of this question turns upon whether Plaintiff *can* recover the relief that she seeks – the "full value of the heart transplant and any related services, as well as all other associated benefits to which Kyree would have been entitled had he lived." (Document No. 15, p. 28).[4] If she cannot seek this kind of relief, her § 502(a)(3) claim will not be "legally sufficien[t]," and thus it should be dismissed. Martin, 980 F.2d at 952. Given that § 502(a)(3) permits a plaintiff to seek either an injunction or "other appropriate equitable relief," the question

---

[4] Plaintiff's claim for injunctive and declaratory relief under section 502(a)(3) is rendered moot as a result of Mr. Holman's death, because Plaintiff "cannot benefit from a declaration of" Defendants' obligations under the Plan. Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002); see United States v. Iaquinta, 701 F. App'x 271, 272 (4th Cir. 2017) ("[a] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome") (internal quotations and citations omitted). The PSA Defendants argue that the mootness issue presents a subject-matter jurisdiction problem for this Court, and the undersigned agrees with that argument. (Document No. 40, p. 2); see Johnson v. Jones, 42 F.3d 1385 (4th Cir. 1994). The undersigned is persuaded by Defendants' convincing argument that dispenses with Plaintiff's analogy, in which she attempts to suggest a parallel between the life insurance context and the health insurance context here. (Document No. 58, pp. 38-39). Plaintiff suggests that a claim for injunctive and declaratory relief in the life insurance context is not rendered moot by virtue of the decedent's death, just as it should not be rendered moot here. Not so. Declarations of rights and forward-looking relief can benefit an estate in the life insurance context because "life insurance plans are designed to provide a benefit to the insured's decedents, while health benefit plans such as the one at issue here operate for the benefit of the covered individual." (Document No. 59, p. 9). Thus, while an estate in the life insurance context has a live claim for injunctive and declaratory relief, here, Plaintiff in the health insurance context does not. The Court's conclusion on this point has no impact on whether the estate can ultimately recover monetary relief that Mr. Holman was potentially rightfully owed – in the event that the Court later finds breach of fiduciary duty. The Harrow court explicitly recognized as much, finding in that case that the estate's damages claim was not mooted. 279 F.3d at 249. Given that Mr. Holman tragically passed away, the injunctive and declaratory relief sought becomes a moot claim because "there is no reasonable expectation [] that the alleged violation will recur" as to Mr. Holman. Los Angeles Cty. v. Davis, 440 U.S. 625, 631 (1979) (internal quotations and citations omitted).

20

is whether monetary compensation to Plaintiff in the amount of the value of the heart transplant (that Mr. Holman did not actually receive) can be considered equitable. Defendants Quantum, UMR, and MCMC argue that what Plaintiff is seeking is a classic articulation of compensatory damages – which are not provided for under § 502(a)(3). (Document No. 43, p. 8); see also (Document No. 45, pp. 20-21); (Document No. 51-1, pp. 10-12). Plaintiff, in opposition, argues that Defendants interpret the scope of equitable relief available under § 502(a)(3) too narrowly. In her response brief, Plaintiff contends that "[w]hile the Supreme Court's early jurisprudence on this issue indeed seemed to suggest that 'appropriate equitable relief' excluded the remedy of make-whole monetary relief," the Supreme Court's Amara case expanded earlier interpretations, holding that equitable relief under § 502(a)(3) "may include monetary relief against fiduciaries," for example, in the form of surcharge. (Document No. 58, p. 24).

Before the Court can analyze whether Plaintiff's pursuit of the full value of the heart transplant qualifies as permissible equitable relief under § 502(a)(3), two threshold questions must be answered – whether Defendants are fiduciaries, and whether Defendants breached those fiduciary duties. Resolution of those questions is inappropriate at this motion to dismiss stage for the reasons explained below, and the undersigned would therefore respectfully recommend that Defendants' respective motions to dismiss Plaintiff's second claim for relief under § 502(a)(3) be denied, pending further discovery on these threshold issues that could clarify the merits of this claim.

At the outset, the undersigned highlights that the Supreme Court's decision in Amara indicated that some forms of monetary relief can appropriately be considered "equitable" under § 502(a)(3). 563 U.S. at 439, 441, 444. Thus, the Supreme Court's earlier jurisprudence that may have suggested that *any* form of monetary relief could not be considered equitable and thus was

barred under § 502(a)(3) was qualified in <u>Amara</u>. <u>See</u> <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 255 (1993) ("[a]lthough they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages* – monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties…[m]oney damages are, of course, the classic form of *legal* relief"); <u>accord</u> <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204, 210 (2002) (same). The Supreme Court clarified in a later opinion that <u>Amara</u> did not overrule <u>Mertens</u> and <u>Great-West</u> – rather, the Court suggested that the traditional understanding of the divide between compensatory and equitable relief persisted post-<u>Amara</u> (with <u>Amara</u> just clarifying those earlier cases). <u>See</u> <u>Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan</u>, 577 U.S. 136, 148 n.3 (2016). According to the Fourth Circuit, "the portion of *Amara* in which the Supreme Court addressed Section 1132(a)(3) stands for the proposition that remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)." <u>McCravy v. Met. Life Ins. Co.</u>, 690 F.3d 176, 181 (4th Cir. 2012). Courts can award plaintiffs presenting claims under § 502(a)(3) a surcharge remedy – an equitable remedy that "provide[s] relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." <u>Amara</u>, 563 U.S. at 441.

As explained below, whether Plaintiff can seek the relief that she seeks – the full value of the heart transplant – in conjunction with her claim under section 502(a)(3) depends upon whether the Court will consider such relief "equitable." Plaintiff's response indicates that the Court should consider the relief that she seeks as "surcharge." (Document No. 58, p. 25). As stated, whether Plaintiff has stated a plausible claim for relief under section 502(a)(3) depends in part on whether she can ultimately recover the relief that she seeks. <u>See</u> <u>Zavala v. Trans-Sys.</u>, 258 F. App'x 155,

158 (9th Cir. 2007) (affirming district court's dismissal of the plaintiff's § 502(a)(3) claim because the plaintiff in that case sought compensatory damages, which are not available as equitable relief under that section of ERISA). And, as also already stated, whether surcharge is an appropriate remedy in this case will rest upon resolution of the fiduciary duty issues, about which the Court here does not make a determination on the merits. To arrive at that next stage of the motion to dismiss analysis, though, the undersigned highlights at the outset that it assumes – without deciding this issue – that there is an argument to be made that the PSA Defendants, at least, were unjustly enriched on account of their actions such that the surcharge remedy *could be* appropriate. Again, determination of this issue is left for a later stage of the litigation once the threshold issues are clarified by further fact discovery. Still, the <u>Amara</u> Court made clear that a fiduciary who is unjustly enriched by a violation of its duties might have to pay a surcharge. 563 U.S. at 441.

Here, despite ultimately approving coverage of the heart transplant, the Plan never paid out the value of that heart transplant to decedent or his estate. Since the Plan is "self-funded," the massive expense of the heart transplant procedure was never pulled from its pool of assets, leaving the value of the procedure for some other use. (Document No. 58-2, p. 5); <u>see</u> <u>Bast v. Prudential Ins. Co. of Am.</u>, 150 F.3d 1003, 1011 (9th Cir. 1998) (crucially, a pre-<u>Amara</u> case that affirmed the district court's grant of summary judgment to the defendant because the value of a procedure that a decedent never received could not be recovered as "equitable relief" under section 502(a)(3) – but, the court in that case importantly noted that the "amount of money [the plan] saved by not paying for the [] procedure" may have led to "unjust enrichment").

As to the other Defendants (UMR, Quantum, and MCMC), surcharge might still be appropriate as a remedy against them because the undersigned is persuaded that Plaintiff could demonstrate "actual harm" – through "loss of a right protected by ERISA" – seemingly irrespective

of unjust enrichment. <u>Amara</u>, 563 U.S. at 444. Defendants attempt to argue that "Mr. Holman's death is not a type of harm contemplated by the surcharge remedy," but the undersigned is not convinced by such contentions because Quantum and MCMC offer little support for those statements. (Document No. 60, p. 9); (Document No. 61, p. 11). *If* Defendants breached their fiduciary duties, and *if* those breaches are shown at a later stage of the litigation to have caused Mr. Holman's death, Plaintiff would satisfy the "actual harm" standard to garner the surcharge remedy.[5]

Thus, the relief that Plaintiff seeks *could* be classified as surcharge under this unjust enrichment theory – but the undersigned does not decide that here. Rather, the Court simply concludes that there is a plausible argument for ultimate recoupment of such relief such that it will continue to analyze the Plaintiff's § 502(a)(3) claim under the 12(b)(6) motion to dismiss standard.

In order to adequately plead a claim under § 502(a)(3) for the surcharge remedy, a Plaintiff must demonstrate that a "fiduciary" committed a "violation of a duty imposed upon that fiduciary" by showing "actual harm." <u>Amara</u>, 563 U.S. at 442, 444. Evidently, deciding whether Plaintiff adequately alleges that Defendants are properly considered fiduciaries with respect to Mr. Holman and whether they breached fiduciary duties that they owed to him are necessary conclusions before the Court can decide whether the relief that Plaintiff seeks is appropriate under § 502(a)(3). But, as stated, actually resolving those issues is premature at this motion to dismiss stage. The undersigned will merely evaluate the plausibility of Plaintiff's arguments on these fronts.

---

[5] UMR and MCMC make arguments that Plaintiff cannot recover extracontractual damages for pain and suffering. (Document No. 45, p. 16); (Document No. 51-1, p. 11). The undersigned notes that Defendants mischaracterize Plaintiff's Amended Complaint, as she states in her response brief to Defendants' motions. Plaintiff "has made no claim for pain and suffering" – rather, she uses such language to support her argument that she has shown the "actual harm" required to satisfy <u>Amara</u>'s standard for a surcharge equitable remedy. (Document No. 58, p. 35).

As to the PSA Defendants, there is no question that Plaintiff adequately alleges that they were fiduciaries with respect to Mr. Holman. Indeed, PSA Airlines is the "[n]amed [f]iduciary" in the Plan document, attached as Exhibit 2 to Plaintiff's response brief. (Document No. 58-2, p. 6). Given that an ERISA fiduciary is one who "performs specified discretionary functions with respect to the management, assets, or administration of a plan," certainly, the plan itself and the plan administrator *clearly* fall within this definition. Custer v. Sweeney, 89 F.3d 1156, 1161 (4th Cir. 1996). As to UMR, too, there can be no question that Plaintiff has adequately plead that UMR was a fiduciary, given that it is specifically named in the Plan document as the "[c]laims [a]ppeal [f]iduciary [f]or [m]edical [c]laims." (Document No. 58-2, p. 6).

As to Quantum and MCMC, determination of whether these Defendants are fiduciaries with respect to Mr. Holman's claims is premature. Undoubtedly, though, Plaintiff has alleged sufficient facts to persuade the undersigned that she should survive a motion to dismiss because her claim is plausible as to Quantum and MCMC. Given that "[d]etermining a defendant's level of discretion is a fact-specific inquiry not suited for a motion to dismiss," the Court concludes that discovery is needed to unearth whether Quantum and MCMC had "functional control and authority" over plan administration. Moon v. BWX Techs., Inc., 577 F. App'x 224, 229 (4th Cir. 2014) (quoting Wilmington Shipping Co. v. New England Life Ins. Co., 496 F.3d 326, 343 (4th Cir. 2007)). Plaintiff alleges that "UMR contracted with Quantum to perform certain of UMR's claim administration responsibilities, including as they related to handling the claim and appeal processing and determinations and the external review coordination at issue in this lawsuit." (Document No. 15, p. 4). Plaintiff also alleges that the January 25 claim determination letter denying Mr. Holman's claim contained Quantum's letterhead. Id. at p. 8. As to MCMC, Plaintiff alleges that it performed the external review of Mr. Holman's claim, overturning the denial of

coverage for the heart transplant – but failing to conduct the external review on an expedited basis. Id. at pp. 14-15. Thus, as to both Quantum and MCMC, Plaintiff has alleged sufficient facts to survive a motion to dismiss the § 502(a)(3) claim because she alleges that they performed discretionary functions that relate to plan administration – thus plausibly suggesting that they might be fiduciaries.

Still, though, resolution of the larger question – whether Plaintiff can recover the monetary value of the heart transplant were her claim under § 502(a)(3) to succeed – depends not only upon whether Defendants are fiduciaries, but whether Plaintiff has adequately pled that they *breached* fiduciary duties. Plaintiff alleges a number of fiduciary breaches by Defendants, which, as to PSA, UMR, and Quantum, generally include the "callous and reckless use of the wrong guidelines and their misapplication of guidelines to Plaintiff's specific medical condition." (Document No. 15, pp. 22-27). As to MCMC, Plaintiff alleges a breach of fiduciary duties related to "the handling, timing, and processing of the external review." Id. at p. 27. At this motion to dismiss stage, the undersigned concludes that Plaintiff has adequately stated a claim for relief – therefore, the undersigned declines to resolve the merits of whether there was a fiduciary breach. See Sentara Virginia Beach Hosp. v. LeBeau, 182 F. Supp. 2d 518, 524 n.7 (E.D. Va. 2002) ("[t]he court expresses no opinion on whether there was a breach of such [fiduciary] duty in ruling on the motion to dismiss pursuant to Rule 12(b)(6)").

The undersigned will highlight here that Defendants' protests that Plaintiff has impermissibly engaged in "group pleading" have no merit – Plaintiff has provided a detailed account of the factual background to her Amended Complaint, and Defendants lack credibility when they argue that they were not put on notice of the allegations against them after a read of the Amended Complaint. See (Document No. 15, pp. 4-15). Clearly, her Complaint satisfies notice

pleading requirements sufficient to satisfy the Rule 8(a)(2) standard under <u>Twombly</u>. <u>Twombly</u>, 550 U.S. at 555; Fed.R.Civ.P. 8(a)(2). Where she designates all "Defendants," the undersigned is convinced by her argument that she does so because it was "the most inclusive mechanism for purposes of notice pleading." (Document No. 58, p. 37). She clearly describes the role – to the extent possible at the pleading stage with the information that she has – of each individual Defendant, and thus, Defendants cannot credibly contend that "[i]t is impossible to discern from the Complaint which defendant is alleged to have done what." (Document No. 41, p. 12). Moreover, since "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage…we relax pleading requirements where the relevant facts are known only to the defendant." <u>Concha v. London</u>, 62 F.3d 1493, 1503 (9th Cir. 1995).

Thus, the undersigned will respectfully recommend that Defendants' motions to dismiss Plaintiff's second claim for relief under ERISA § 502(a)(3) be denied. After an analysis of Plaintiff's allegations in the Amended Complaint, the undersigned concludes that Plaintiff has pled sufficient facts to demonstrate that Defendants were plausibly acting as fiduciaries and plausibly may have breached their fiduciary duties – which is enough to survive a motion to dismiss under Rule 12(b)(6). The Court leaves for a later stage of this litigation following discovery a determination on the merits of whether Defendants actually were fiduciaries and whether they actually breached their duties. Such a determination will clarify whether Plaintiff can recoup the relief that she seeks – the full value of the heart transplant – as a "surcharge" remedy. Resolution of those latter outstanding issues are not decided here.[6]

---

[6] In making the respectful recommendation that Defendants' motions to dismiss Plaintiff's § 502(a)(3) claim should be denied, the undersigned notes that it does not address UMR, Quantum, and MCMC's arguments that they do not hold property belonging to the estate (thus arguing that Plaintiff is precluded from garnering any monetary relief from

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "PSA Airlines Defendants' Motion To Dismiss" (Document No. 40), "Defendant Quantum Health, Inc.'s Notice Of Joinder In PSA Defendants' Motion To Dismiss And Supplemental Motion To Dismiss" (Document No. 42), "UMR, Inc.'s Motion Under Federal Rule of Civil Procedure 12(b)(1) And 12(b)(6) To Dismiss The Amended Complaint" (Document No. 44), and "Defendant MCMC, LLC's Rule 12(b)(6) Motion To Dismiss For Failure To State A Claim" (Document No. 51) be **GRANTED in part** and **DENIED in part**, as discussed herein.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>United States v. Benton</u>, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u> "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the

---

any of them). (Document No. 43, p. 9); (Document No. 45, pp. 21-22); (Document No. 51-1, p. 12). The <u>Amara</u> Court did not specify that traceability of recoverable funds to Defendants was a necessary prerequisite to award of the surcharge remedy. 563 U.S. at 441-44; <u>see also</u> <u>DeRogatis v. Bd. of Trs. of the Welfare Fund of the Int'l Union of Operating Eng'rs Local</u>, 385 F. Supp. 3d 308, 319 (S.D.N.Y. 2019); <u>Horan v. Reliance Standard Life Ins. Co.</u>, 2014 WL 346615, at *12 n.4 (D.N.J. Jan. 30, 2014) (same).

28

objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

       **IT IS SO RECOMMENDED**.

Signed: March 24, 2021

David C. Keesler
United States Magistrate Judge